IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 18-34-3 |
| SHANTAL GRANT | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                       **February 24, 2022**

Defendant Shantal Grant has filed a pro se Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A).[1] Because the Court finds Grant has failed to make the necessary showing of extraordinary and compelling circumstances warranting her release, and because the § 3553(a) factors weigh against granting release, her motion shall be denied.

**BACKGROUND**

On January 30, 2018, Grant was charged, along with seven others, in a multi-count indictment with one count of conspiracy, two counts of mail fraud and aiding and abetting, two counts of filing fraudulent tax returns and aiding and abetting, one count of false statements, and one count of aggravated identity theft and aiding and abetting in violation of 18 U.S.C. § 2, § 287, § 371, § 1028A(a)(1) and (c)(5), and § 1341. These charges arose out of two several-years-long

---

[1] In actuality, Grant filed two motions. On January 28, 2022, she filed a pro se, hand-written "Emergency Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) Pursuant to the First Step Act of 2018." ECF No. 249. On February 15, 2022, Grant filed a second "Pro Se Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)," ECF No. 255, which is essentially a typewritten version of her earlier motion and raises the same arguments. Because the relief sought and the grounds therefor are the same in both filings, the Court shall treat them as one motion.

schemes to defraud the Department of Labor and the Internal Revenue Service through the creation of false and fraudulent businesses and employees for the purpose of filing for unemployment benefits and income tax refunds. In the first scheme, after the businesses were created, Grant and her co-defendants filed for and received unemployment compensation benefits when they were "laid off" from their "employers." In the second scheme, the defendants filed false and fictitious tax returns with the IRS, enabling them to receive tax refunds when, in fact, no refunds were due. In order to facilitate the creation of the phony businesses and employees and the subsequent filing of fraudulent tax and unemployment compensation claims, the defendants also stole identity information from a number of innocent victims who had no involvement in the conspiracy.

On May 25, 2021, Grant pled guilty pursuant to a plea agreement to one count of conspiracy, two counts of mail fraud and one count of false statements. The Government agreed to dismiss the remaining counts at sentencing. Grant was sentenced on October 27, 2021 to six months' imprisonment to be followed by two years of supervised release and was ordered to pay restitution in the amount of $60,582 and a $400 assessment. Following sentencing, Grant was given more than a month to report to prison and she commenced serving her sentence at FCI Danbury in Danbury, Connecticut on November 29, 2021.

At the time Grant reported to prison, she was approximately six weeks' pregnant. Grant now alleges her pregnancy and other health conditions, including obesity, low blood pressure, back pain, and ADHD, all make her and her unborn child susceptible to permanent harm or death should she contract COVID-19. On this basis, Grant contends she qualifies for compassionate release under 18 U.S.C. § 3582(c)(1)(A). The Government opposes the motion, noting that Grant has refused the COVID-19 vaccine and arguing she is not an appropriate candidate for compassionate release.

**LEGAL STANDARDS**

As noted, Grant invokes the "compassionate release" provisions of 18 U.S.C. § 3582(c)(1)(A)(i), which read:

> **(c) Modification of an imposed term of imprisonment. –** The court may not modify a term of imprisonment once it has been imposed except that –
>
> > **(1)** in any case –
> >
> > > **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
> > >
> > > > **(i)** extraordinary and compelling reasons warrant such a reduction; or
> > > >
> > > > **(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
> > > >
> > > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

The applicable § 3553(a) factors in Grant's case are "the nature and circumstances of the offense and the history and characteristics of the defendant," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, … to provide just

punishment for the offense[,] … to afford adequate deterrence to criminal conduct[,] [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1), (2)(A)–(C).

The Sentencing Commission has yet to update its Policy Statement relative to reductions in terms of imprisonment under § 3582(c)(1)(A) since passage of the First Step Act, which amended § 3582(c)(1)(A) to permit individual defendants to bring compassionate release motions on their own behalf. By its terms, the Policy Statement set forth at U.S.S.G. § 1B1.13[2] is limited to compassionate release motions initiated by the Bureau of Prisons. Hence, the Policy Statement is not binding on district courts considering defendant-initiated compassionate release motions, and courts are free to consider other reasons a defendant raises that are not specifically referenced in the Policy Statement in determining whether extraordinary and compelling reasons exist. *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021); *United States v. Jefferson*, No. 21-2020, 2021 U.S. App. LEXIS 28572, at *7 (3d Cir. Sept. 21, 2021). The Policy Statement,

---

[2] The U.S.S.G. § 1B1.13 Policy Statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that –
>
> **(1)(A)** Extraordinary and compelling reasons warrant the reduction; or
>
> **(B)** The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> **(3)** The reduction is consistent with this policy statement.

however, "still sheds light on the meaning of extraordinary and compelling reasons," and it therefore continues to provide guidance in deciding § 3582(c)(1)(A) motions. *Andrews*, 12 F.4th at 260. District courts are vested with discretion in their weighing of the § 3553(a) factors and in determining motions for compassionate release. *United States v. Pawlowski*, 967 F.3d 327, 330 (3d Cir. 2020); *United States v. Augustin,* No. 20-3609, 2021 U.S. App. LEXIS 37470, at *1- *2 (3d Cir. Dec. 20, 2021).

The Commentary to the Policy Statement provides that extraordinary and compelling reasons for release may exist where the defendant is either suffering from a terminal illness, or is suffering from another condition - a serious physical or medical condition, a serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process - "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1A(ii). Additionally, extraordinary and compelling reasons may exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less," *id.* cmt. n.1(B), or where the caregiver of a defendant's minor children dies or becomes incapacitated, or a defendant's spouse or registered partner for whom the defendant would be the only caregiver becomes incapacitated, *id.* cmt. n.1(C). Finally, the Policy Statement also contains a catchall provision giving "the Director of the BOP the authority to determine if 'there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with' the other categories." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 396-397 (E.D. Pa. 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)). Under the Policy Statement, "rehabilitation of the defendant is not, by itself,

an extraordinary and compelling reason." U.S.S.G. § 1B1.13 cmt. n.3. The defendant bears the burden of proof by a preponderance of the evidence on a motion for compassionate release. *United States v. Grasha*, 489 F. Supp. 3d 403, 406 (W.D. Pa. 2020); *United States v. Adeyemi,* 470 F. Supp. 3d 489, 501 (E.D. Pa. 2020).

**DISCUSSION**

On January 11, 2022, Grant submitted a request to the Warden of FCI Danbury seeking compassionate release on the grounds of her pregnancy, BMI over 30, back pain, and low blood pressure. The request was denied, and given that 30 days have since elapsed (and as the Government acknowledges), Grant has satisfied the administrative exhaustion requirement of § 3582(c)(1)(A).

In determining whether extraordinary and compelling reasons are present in Grant's case, the Court first takes judicial notice that COVID-19, which was declared a pandemic in March of 2020, continues to sicken millions of people worldwide. In the United States, there have been a total of nearly 77,951,000 diagnosed cases of COVID-19 which have resulted in more than 923,000 deaths to date. Although some 80.8% of people age five and over have received at least one dose of a COVID-19 vaccine, community transmission throughout the United States remains "high." www.covid.cdc.gov/covid-data-tracker/#datatracker-home. While the COVID-19 vaccines are effective at preventing most infections, they are not 100% effective. Fully vaccinated people who get breakthrough infections, however, tend to have less severe symptoms and are less likely to suffer severe illness than those who are not vaccinated. www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html

This Court has previously recognized that "COVID-19 poses a unique challenge to the prison system." *United States v. Nunez,* 483 F. Supp. 3d 280, 283 (E.D. Pa. 2020). In response to

the pandemic, the federal Bureau of Prisons has modified operations within its facilities to mitigate the risk and spread of COVID-19. Mitigation measures include suspending or otherwise limiting visits as to format, duration, frequency and number of visitors, mandating testing and masking of all inmates, staff, and visitors; restricting inmate movement within the institutions to maximize social distancing; and mandating frequent cleaning of all facilities. In addition, daily symptom and temperature checks of inmates and staff are conducted, and all new inmates are quarantined for 14 days following their arrival and are not released into the general population until they have also had a negative COVID test. www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp. The operational status of each institution is determined based on a number of health indicators, including the level of transmission within the institution and in the surrounding community. Although mitigation measures have been in place throughout the pandemic, the particular interventions in place at a given institution vary based on the institution's operational status. www.bop.gov/coronavirus/covid19_status.jsp.

      Grant is serving her sentence at FCI Danbury in Danbury, Connecticut. This facility has a total population of 1,030 male and female inmates.[3] Presently, FCI Danbury has four COVID-19 positive inmates and four COVID-19 positive staff members. The records do not indicate whether any of these COVID-19 inmates are women. FCI Danbury is currently operating at level 3, the most restrictive operations level requiring enhanced and frequent cleaning of all areas, masking of all inmates and staff, and daily symptom checks of any and all inmates and staff leaving and re-

---

[3] FCI Danbury is comprised of three facilities: the Federal Correctional Institution (FCI) (low security male), the Federal Prison Camp (FPC) (low security female), and the Federal Satellite Low-Female (FSL-F). Presently, there are 831 inmates at the FCI, 90 in the FPC, and 109 in the FSL-F. The record in this case does not reflect whether Grant is housed in the FPC or in the FSL-F.

entering the facility.  Normal operations and all visiting have been suspended until further notice.  Since the inception of the pandemic at Danbury FCI, there has been only one inmate death and no staff deaths to date.  www.bop.gov/locations/institutions/sch/.

According to the CDC, there are a number of medical conditions which put people at greater risk of adverse outcomes from COVID-19.  These include: cancer; chronic kidney, liver and lung diseases; diabetes; heart conditions like heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; having an immune-compromised state/weakened immune system; and obesity.  www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Pregnancy is another such condition as it causes changes in the body that can make it easier to get very sick from respiratory viruses such as COVID-19.  The risk is further elevated for those older than 25 years of age when pregnant.  www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/pregnant-people.html.

The COVID-19 vaccines, however, have been found safe and effective for pregnant women.  The CDC has therefore strongly recommended that pregnant women receive the COVID-19 vaccine.  *Id.*  Grant's medical records reflect that she is 30 years old, is 5'4" tall, and weighs 170 pounds.[4]  In addition to being pregnant, Grant has a reported history of eczema and ADHD.  Although several of her blood pressure readings have been somewhat low, the majority were in the normal range.  In any event, Grant has not been diagnosed as having low blood pressure.[5]

---

[4] The CDC defines obesity as having a body mass index (BMI) of greater than or equal to 30 kg/m and less than 40 kg/m.  Overweight is defined as having a BMI of greater than or equal to 25 kg/m but less than 30 kg/m.  At her present weight, Grant has a BMI of 29.2, which places her in the overweight category.  At intake, however, she weighed 182 pounds, which translated to a BMI of 31.2, within the obese category.

[5] Low blood pressure is generally defined as "a blood pressure reading lower than 90 millimeters of mercury (mm Hg) for the top number (systolic) or 60 mm Hg for the bottom

Exhibits to Gov't's Resp. in Opp'n. to Def.'s Mot. for Comp. Rel., ECF No. 253. Grant thus suffers from two of the conditions listed in the CDC's "higher risk" categories: pregnancy and obesity.

However, Grant's medical records indicate she is receiving regular and appropriate medical and pre-natal care in the prison setting. Her pregnancy is being overseen by an obstetrician/gynecologist whom she sees every 2-4 weeks for follow-up, at which time urinalysis and bloodwork is done. Grant was offered both the COVID-19 and flu vaccines at the time of her intake at FCI Danbury, but she refused both. She has access to medical care whenever she needs it, and in early December was promptly transported to the Danbury Hospital Emergency Department for evaluation of vaginal bleeding to rule out miscarriage or the possibility of ectopic pregnancy. In the course of a recent regular pre-natal check-up, Grant was also diagnosed and treated for a vaginal infection with a course of antibiotic treatment. In all other respects, Grant's pregnancy appears to be routine.

Grant does not take issue with the quality of the medical and pre-natal care she is receiving. Rather, the vast majority of her motion and briefing concern her complaints with the overall conditions in her institution. More particularly, Grant claims the food is of poor quality, she resides in dormitory-style living where the same group of women share a small number of bathrooms and travel to and from the cafeteria together. In addition, the inmates must walk outside to a separate building to shower. Def.'s Mot. for Comp. Rel. 2, ECF No. 255. While all of these conditions may indeed be unpleasant and less than ideal for a pregnant woman, they do not rise to the level of extraordinary and compelling circumstances warranting compassionate release. In fact, a

---

number (diastolic). www.mayoclinic.org. Grant's closest blood pressure readings to this threshold have been 105/66 and 104/64.

9

compassionate release motion is not the appropriate vehicle to air such grievances. "The Board of Prisons has a three-level Administrative Remedy Program that is available to inmates for 'review of an issue which relates to any aspect of their confinement.'" *Drummond v. Martinez*, No. 3:09cv1258, 2009 U.S. Dist. LEXIS 92749, at *8 (M.D. Pa. Oct. 5, 2009) (quoting 28 C.F.R. § 542.10).[6] There is no evidence that Grant has availed herself of this administrative process, and for this reason, too, her complaints may not be considered at this time. In any event, in light of the medical care which Grant is receiving, the availability to her of the COVID-19 vaccine, and the COVID-19 mitigation measures in place at FCI Danbury, the Court does not find Grant's medical conditions rise to the extraordinary and compelling threshold necessary for a grant of compassionate release. Consequently, Grant's request for such release on the grounds of her medical conditions is denied.

In determining the propriety of compassionate release, the Court must also consider the sentencing factors articulated in 18 U.S.C. § 3553(a). In so doing, the Court finds Grant was between 19 and 24 years old at the time she participated in the crimes at issue in this case. The schemes were long-running and Grant had the opportunity to opt-out at any time. Instead, she consciously chose to continue to participate and commit the offenses with which she ultimately was charged. There is no question that these were serious – over the course of more than five years, Grant and her co-conspirators stole the identities of 11 innocent victims and fraudulently

---

[6] Under this three-tiered system, an inmate must first attempt to resolve the issue informally with institutional staff. 28 C.F.R. § 542.13(a). If the effort at informal resolution is unsuccessful, the inmate may then appeal to the Warden of his or her institution by filing a formal, written Administrative Remedy Request. 28 C.F.R. § 542.14. If the inmate is dissatisfied with the Warden's disposition of the Request, an appeal may be filed within 20 days with the Regional Director. 28 C.F.R. § 542.15(a). If the inmate is still dissatisfied, a final appeal to the General Counsel/BOP Central Office may be made within 30 days of the issuance of the Regional Director's determination. *Id.* A civil action may not be initiated unless or until these available administrative remedies have been exhausted. 42 U.S.C. § 1997e(a).

obtained more than $2 million from the Government, $60,582 of which was received by Grant herself. Although Grant did not have a prior criminal record at the time she participated in these crimes, she has been untruthful and uncooperative on a number of occasions with the Government in general and the Probation Office in particular with regard to this case. In addition to lying about her employment history to federal agents, Grant failed to account for the significant sums of money which appeared in her bank account that were inconsistent with her verified employment, and she failed to provide the Probation Office with requested documentation regarding her medical, employment, purchasing, and financial history in the weeks leading up to her sentencing. The Court carefully considered all of these factors in imposing Grant's sentence and concluded that a term of six months in prison was necessary to punish and deter Grant, to protect the public from her future criminal activity, and to promote respect for the law. In reconsidering the relevant § 3553(a) factors, the Court finds Grant's sentence remains an appropriate one and should not be disturbed. Grant's estimated release date is May 27, 2022, and she is eligible for consideration for home confinement on May 10, 2022. She has served less than one-half of her term to date. Although the Court recognizes Grant has every right to decline to be vaccinated against COVID-19 and that the decision is hers alone, her choice not to avail herself of this means of protection does not give rise to an extraordinary and compelling circumstance. Thus, after weighing all of the evidence in this case, the Court simply cannot find compassionate release to be warranted. Grant's motion is therefore denied.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez

_____
Juan R. Sánchez,      C.J.